
09/02/2009

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| KEVIN SEWELL and SUZANNE | § | Case No. 07-41847 |
| CRUZ SEWELL, | § | (Chapter 7) |
| | § | |
| Debtors. | § | |
| _____ | § | |
| | § | |
| ALVARADO LAND DEVELOPMENT, | § | |
| INC., as the assignee of WARRANTY | § | |
| UNDERWRITERS INSURANCE CO., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adv. Proc. No. 07-4195 |
| | § | |
| KEVIN SEWELL and SUZANNE | § | |
| CRUZ SEWELL, | § | |
| | § | |
| Defendants. | § | |

**<u>MEMORANDUM OPINION</u>**

Warranty Underwriters Insurance Company ("<u>WUIC</u>") initiated this action against Kevin Sewell and Suzanne Cruz Sewell (collectively, the "<u>Sewells</u>") by filing an Original Complaint to Determine Dischargeability on November 9, 2007. In the adversary complaint, WUIC sought a judgment that the Sewells' obligations to it under a Judgment on Arbitration Award and a Final Judgment on Cross Claim entered by a Texas state court on October 5, 2005 (collectively, the "<u>Judgments</u>"), are nondischargeable pursuant to 11 U.S.C. §523(a)(2)(A) and (B). Following an alleged satisfaction of the Judgments, the Sewells moved to dismiss this adversary proceeding and for summary judgment denying WUIC's claims. Alvarado Land Development, Ltd. ("<u>Alvarado Ltd.</u>") responded to the Sewells' motions, claiming to hold the Judgments as WUIC's assignee.

In addition, and Alvarado Ltd. and WUIC filed a joint motion seeking to substitute Alvarado Ltd. for WUIC as the plaintiff in this action.

The Court tried this action on October 23, 24 and 27, 2008. Prior to beginning the trial, the Court granted Alvarado Ltd.'s motion to substitute with the express reservation that the Court was not thereby finding or concluding that Alvarado Ltd. has standing in this adversary proceeding. The Court stated in the ruling that the issue of standing would be tried with the adversary complaint. Likewise, the Court ruled that the issues raised by the Sewells in connection with their motion to dismiss and their request for summary judgment would be decided in the context of the trial.

## I. JURISDICTION

A proceeding seeking a determination of the dischargeability of a debt raises a core matter over which this Court has jurisdiction to enter a final order. 28 U.S.C. §§ 157(b)(2)(I) and 1334.

## II. FACTS

Salahuddin Hakim ("Salahuddin") has been involved in the construction business since 1984. Salahuddin operated Munir Homes, Inc. ("Munir Homes") from 1999 through at least 2002. His brother, Ziauddin Hakim ("Ziauddin"), was also an officer of Munir Homes. Munir Homes employed Suzanne Cruz Sewell ("Suzanne") to manage the construction of several homes. Suzanne testified that, as a project manager for Munir Homes, she was responsible for enrolling the homes in a home warranty program during construction.

In 1999, Suzanne's husband, Kevin Sewell ("Kevin"), approached Salahuddin about 12 empty lots available for purchase in Carrollton, Texas. Salahuddin and Kevin

agreed that Munir Homes would purchase seven of these lots and that the Sewells would purchase the remainder. Munir Homes obtained a contract for the purchase of all 12 lots. At the closing, Munir Homes brought money for seven lots, and Kevin brought a check for five lots.

The Sewells oversaw the construction of homes on all of the 12 lots. With respect to the lots belonging to Munir Homes, the homes constructed on these lots were enrolled in a home warranty program insured through Warranty Underwriters Insurance Company ("WUIC"). Munir Homes had applied to and was enrolled in the WUIC program. The Sewells, who were doing business as Alta Vista Construction, were not enrolled in such a program. As a consequence, Kevin approached Salahuddin and requested that he "pre-enroll" one of the Sewells' lots, located at 1619 Mayflower, Carrollton, Texas (the "Mayflower Home"), in a home warranty program. Kevin explained to Salahuddin that the purpose was to qualify the lot for the various inspections which would be required during the construction of a home on the lot.

Salahuddin testified that Kevin assured him that Alta Vista Construction would become a member of a home warranty program and would transfer the Mayflower Home to that program as soon as possible. At trial, however, Suzanne testified that she did not believe, based on her experience as a project manager for Munir Homes, that it would be possible to transfer a home to a new warranty program after the home had already been pre-enrolled in another warranty program. Susan Duncan, who is employed by the administrator for WUIC, contradicted Suzanne's testimony by testifying that it is possible to change warranty programs after the initial enrollment of a home in a particular program and, further, that home builders frequently do so.

Salahuddin agreed to enroll the Mayflower Home in the WUIC home warranty program based on Kevin's assurances. Salahuddin testified, credibly, that he did this as a favor to the Sewells. WUIC agreed to the enrollment based on the representation in the application for enrollment that Munir Homes was building the Mayflower Home. Munir Homes, however, did not build the Mayflower Home. The Sewells built the Mayflower Home and sold it to Peter and Jayna Dougherty (the "Doughertys").

In connection with the sale of the Mayflower Home to the Doughertys, Suzanne signed and submitted to WUIC a document entitled "Application for Warranty" dated September 9, 1999. The representations made in the Application for Warranty are the subject of this adversary proceeding. In particular, the Application for Warranty listed the "builder name" as "Salahuddin Hakim," and Suzanne signed the Application for Warranty as the "Builder Representative." The fees for enrollment in the WUIC program were paid from the proceeds of the sale of the Mayflower Home, and the profit from the sale of the Mayflower Home was paid to Suzanne d/b/a Alta Vista Construction.

The Mayflower Home had significant defects, including massive foundation problems. The Doughertys initiated a state court action against the Hakims, the Sewells and WUIC. Salahuddin was deposed on December 11, 2004, in connection with the state court lawsuit. He testified that Munir Homes was no longer operating, that he had been paid approximately $5,000 during 2004, and that he was "pretty much unemployed." Salahuddin testified that he was helping his brother, Ziauddin, with his limousine business. Ziauddin testified in a separate deposition that his limousine business involved two limousines and was operated out of the home where he lived with Salahuddin.

An arbitrator in the state court action entered an Award dated June 21, 2005, in favor of the Doughertys and against Munir Homes, the Hakims, and the Sewells, jointly and severally. The arbitrator found, among other things, that "it appeared that the Hakims were aware of '*their part*'" in the scheme to obtain a home warranty for the lot developed by the Sewells." The Award provided that if the Hakims and the Sewells failed to pay the Doughertys within 30 days, WUIC would be responsible for paying the total sum of $120,802.31 to the Doughertys. The Award further provided that WUIC would be entitled to recover any amounts paid to the Doughterys from the Sewells and the Hakims.

At or around the time the arbitrator entered the Award against the Hakims, Salahuddin caused Alvarado Ltd. to be formed. The general partner of Alvarado Ltd. is Alvarado Development Group, L.L.C. ("Alvarado L.L.C."), which Salahuddin caused to be formed at or around the same time as Alvarado Ltd. The sole limited partner of Alvarado Ltd. is the SZH Family Trust.[1] Ziauddin is the sole member of Alvarado L.L.C., and Salahuddin is its sole manager. Salahuddin testified that the beneficiaries of the SZH Family Trust are his children, that he is the sole trustee, and that he makes all decisions for the SZH Family Trust.

Salahuddin testified that Alvarado L.L.C. does not have a bank account and that its primary business is the development of real estate owned by Alvarado Ltd. According to Salahuddin's testimony at trial, Alvarado Ltd. owns valuable commercial property worth "a few million." Salahuddin testified that Alvarado Ltd. and Alvarado L.L.C. are part of a joint venture with Luxor Hospitality, L.L.C. ("Luxor") to build a hotel and

---

[1] In his deposition in the state court action, Salahuddin testified that one of his children lives with his ex-wife in Alvarado, Texas.

5

shopping center on Alvarado Ltd.'s property. However, it was unclear from Salahuddin's testimony when Alvarado Ltd. acquired the property or how Alvarado Ltd. obtained the funds to do so.

Alvarado L.L.C. and Alvarado Ltd. share the same business address, which is the Hakims' home address, and Ziauddin is listed the registered agent for both companies.[2] Salahuddin was unable to distinguish between his roles at Alvarado L.L.C. and Alvarado Ltd. in his testimony at trial. Salahuddin testified that the SZH Family Trust owns Alvarado Ltd. and Alvarado L.L.C. and that any profit from the joint venture with Luxor will go to the SZH Family Trust. There was no evidence that Salahuddin has any source of income other than through Alvarado Ltd., Alvarado L.L.C., and the SZH Family Trust. Salahuddin testified that Alvarado Ltd. has a bank account and he has sole authority to issue checks from that account.

On October 5, 2005, the state district court confirmed the Award and entered the Judgments. In the Judgment on Arbitration Award, the state court recognized that WUIC had already paid $120,802.31 to the Doughertys. The state court, therefore, awarded WUIC a judgment against Munir Homes, the Hakims, and the Sewells, jointly and severally, for $120,802.31, plus post-judgment interest. In addition, in the Final Judgment on Cross Claim, the state court awarded WUIC an additional judgment against Suzanne, the Hakims, and Munir Homes, jointly and severally, in the amount of $86,854.

WUIC thereafter sought to collect the Judgments from Munir Homes, the Sewells and the Hakims. The parties stipulate in their Joint Pretrial Order that WUIC sought to

---

[2] Ziauddin speaks only limited English. Salahuddin testified that he talks with his brother before his brother signs any documents and explains the documents to him.

6

collect the Judgments from them by means of a writ of attachment in state court.[3] The Sewells filed for bankruptcy protection in August 16, 2007. Alvarado Ltd. asserts in the Joint Pretrial Order that, in August 2008, the Hakims and Alvarado Ltd. entered into a settlement with WUIC whereby Alvarado Ltd. agreed to pay the Judgments and WUIC agreed to assign the Judgments to Alvarado Ltd.

On October 9, 2008, Salahuddin told Kevin that the development group he was associated with had agreed to pay WUIC and that he was obligated to repay the development group. Salahuddin testified that the development group was actually Alvarado Ltd. According to Salahuddin's testimony, Alvarado Ltd. agreed to pay WUIC because WUIC had filed a notice of lis pendens in the real property records relating to the real property that was the subject of the joint venture with Luxor.[4] Salahuddin testified that his understanding of the settlement was that "if we pay them off, they settle with us, they will remove the lis pendens." Salahuddin testified, however, that he and his brother remained obligated to WUIC, and WUIC had not yet removed the lis pendens, because Alvarado Ltd. had not yet fully paid WUIC at the time of trial.

WUIC, Salahuddin, and Ziauddin were all listed as creditors in the Sewells' bankruptcy schedules. WUIC filed this adversary proceeding seeking a judgment of non-dischargeability under 11 U.S.C. §523(a)(2)(A) and (B) based on an alleged conspiracy

---

[3] The parties appear to be confusing a writ of attachment with the enforcement of a judgment through execution, including a writ of possession. Under Texas law, the right to the remedy of a writ of attachment ends when a judgment has been entered. *See* TEX. R. CIV. P. 592; 17 TEX. JUR. 3d, *Creditors' Rights and Remedies* §184. After a judgment has been entered, the right to execution accrues and a writ of possession may be issued by the clerk of the court. *See* TEX. R. CIV. P. 621, *et seq.*

[4] The filing of a lis pendens notice gives notice of a pending cause of action involving eminent domain, title to real property, establishment of an interest in real property, or enforcement of an encumbrance against real property. *See* TEX. PROP. CODE ANN. § 12.007; *Prappas v. Meyerland Community Improvement Assoc.,* 795 S.W.2d 794 (Tex.App.—Houston [14th Dist.] 1990, writ den.). The county clerk must record the notice in a lis pendens record. *See* TEX. PROP. CODE ANN. §12.007(c).

7

on the part of Salahuddin, Ziauddin, Kevin and Suzanne to defraud WUIC. Alvarado Ltd. is now seeking to prosecute WUIC's adversary complaint against the Sewells. The Sewells have filed a Motion to Dismiss Based on Lack of Subject Matter Jurisdiction as well as a Motion for Summary Judgment in which they argue that Alvarado Ltd. lacks standing to prosecute this adversary proceeding.

### III. ANALYSIS

At trial, Alvarado Ltd. expressly abandoned the §523(a)(2)(B) claim. Alvarado Ltd.'s sole remaining claim is that the Sewells' liability under the Judgments may not be discharged in bankruptcy pursuant to §523(a)(2)(A). Alvarado Ltd. has the burden of proof under a preponderance of the evidence standard. *See Grogan v. Garner*, 498 U.S. 279, 286 (1991). "Intertwined with this burden is the basic principle of bankruptcy that exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start." *Hudson v. Raggio & Raggio, Inc. (In re Hudson)*, 107 F.3d 355, 356 (5th Cir. 1997). Thus, without satisfactory proof of each element of the §523(a)(2)(A) cause of action, judgment must be entered for the Sewells.

#### A. Alvarado Ltd.'s Standing

As a threshold matter, the Sewells challenge Alvarado Ltd.'s standing in this action. Alvarado Ltd., as the party invoking this Court's jurisdiction, has the burden of proving standing. *See In re La Sierra Financial Services, Inc.*, 290 B.R. 718, 726 (9th Cir. BAP 2002) ("The party asserting standing bears the burden of proving it."); *Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1092 (2d Cir. 1995) ("The burden to establish standing remains with the party claiming that standing exists"); *E.F. Hutton & Co., Inc. v.*

*Hadley,* 901 F.2d 979, 984 (11th Cir. 1990) ("When standing has been contested, it is the burden of the party claiming standing"); *Zahn v. Yucaipa Capital Fund,* 218 B.R. 656, 662 (D. R.I. 1998) ("The burden of proof must be carried by the party whose standing is questioned."). The quantum and type of proof that must be brought forward depends on the stage of the proceedings at which standing is challenged or otherwise reviewed. At the final stage, as in this case, controverted facts "must be 'supported adequately by the evidence adduced at trial.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). (quoting *Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 115 n.31 (1979)).

The only requirement for standing to bring a nondischargeability action based on §523(a) of the Bankruptcy Code is that the action must be brought by a creditor. *See* 11 U.S.C. §523(c). The Bankruptcy Code defines a creditor as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). A "claim" is defined as a "right to payment, whether or not such right is reduced to judgment...." 11 U.S.C. §101(5)(A).

The Sewells sought to establish at trial that Alverado Ltd. is not one of their creditors, because it does not have a right to payment from them under Texas law. The Sewells argued that the Hakims are using Alvarado Ltd. to allow them to do something that is otherwise impermissible – namely, to collect the Judgments from their co-defendants with whom they are jointly and severally liable.[5] *See* BLACK'S LAW

---

[5] Joint and several liability is appropriate in tort cases when the independent tortious conduct of two or more persons is a legal cause of an indivisible injury and in contract cases when two or more persons promise the same performance. *CTTI Priesmeyer, Inc. v. K&O Ltd. P'ship,* 164 S.W.3d 675, 684 (Tex. App. - Austin 2005, no pet.). At trial, the Sewells argued that the state court action involved a tort-like claim under the Texas Deceptive Trade Practices Act and, therefore, that the Sewells and the Hakims were determined to be joint tortfeasors. The Texas Supreme Court has held that an assignment of a plaintiff's claim against one joint tortfeasor to another joint tortfeasor as part of a settlement between the plaintiff and the assignee tortfeasor, is invalid as a matter of public policy. *State Farm Fire & Cas. Co. v. Gandy,* 925 S.W.2d 696, 707-11 (Tex. 1996). However, in contrast to *Gandy* and its progeny, the alleged

9

DICTIONARY (8th ed. 2004) (defining "straw man" as, among other things, "[a] third party used in some transactions as a temporary transferee to allow the principal parties to accomplish something that is otherwise impermissible"). The Sewells also argued that their liability on the Judgments was extinguished by Alvarado Ltd.'s alleged payment to WUIC.

Under Texas law, if two parties are jointly and severally liable on a judgment, the acquisition of the judgment by one judgment debtor extinguishes the judgment for all judgment debtors. *See BW Village, Ltd. v. Tricon Enters., Inc.,* 879 S.W.2d 205, 209 (Tex. App. - Houston [14th Dist.] 1994, writ denied); *Rich v. Smith,* 481 S.W.2d 162, 163 (Tex. Civ. App. – Fort Worth 1972, writ ref'd n.r.e.) (quoting 46 Am.Jur.2d *Judgments* § 891 (1969)); *see also McAnally v. Smith,* 379 F.Supp. 1129, 1130 (N.D. Tex. 1974). Further, under Texas law, a judgment is extinguished where payment is made by, and the judgment is assigned to, one who acts "for the use and benefit of" a judgment debtor. *Hadad v. Ellison,* 283 S.W. 193, 196 (Tex. Civ. App. – Beaumont 1926). The judgment in such cases is satisfied in the same manner as though payment had been made by the judgment debtor. *See id.* at 198 (judgment was extinguished where assignee was merely holding the judgment for judgment debtor's benefit).

In contrast, the payment of a judgment by a stranger does not operate as an extinguishment if there is some understanding that it is to be continued in force for the benefit of the person who made the payment. *Terry v. O'Neal*, 9 S.W. 673 (1888);

---

assignment at issue in this case does not involve a pending claim, but a judgment on the Doughertys' claims. Texas courts have developed several doctrines addressing the assignment of judgments to co-defendants as discussed more fully in this Memorandum Opinion.

10

*Williams v. Hedrick*, 131 S.W.2d 187 (Tex. Civ. App. -- Beaumont 1939, writ dism'd). A "stranger" is generally defined as follows:

> **1.** One who is not party to a given transaction; esp., someone other than a party or the party's employee, agent, tenant, or immediate family member. [Cases: Contracts ⚿185. C.J.S. *Contracts* §§ 610-612, 619-620.] **2.** One not standing toward another in some relation implied in the context; esp., one who is not in privity. **3.** A person who voluntarily pays another person's debt even though the payor cannot be held liable for the debt and the payor's property is not affected by the creditor's rights.

BLACK'S LAW DICTIONARY (8th ed. 2004). When an agreement to assign a judgment is shown, the doctrine of subrogation is applied for the mere stranger or volunteer who has paid the debt of another, without being under any legal obligation to make payment, and without being compelled to do so for the preservation of any rights or property of his own. *See First Nat. Bank of Kerrville v. O'Dell,* 856 S.W.2d 410, 415 (Tex. 1993) (citing *Oury v. Saunders,* 77 Tex. 278, 280, 13 S.W. 1030, 1031 (1890)).

Here, Alvarado Ltd. contends that it is a stranger to the Judgments and, therefore, has standing to enforce the Judgments in this adversary proceeding. The Sewells reply that Alvarado Ltd. is not a stranger to the Hakims or, in reality, to the Judgments. According to the Sewells, the Hakims are simply using Alvarado Ltd. to avoid the extinguishment of the Judgments under Texas law. Significantly, Alvarado Ltd. did not introduce any documentary evidence supporting Salahuddin's testimony regarding Alvarado Ltd.'s standing – such as a copy of the assignment agreement with WUIC, Alvarado Ltd.'s bank records reflecting any payment(s) to WUIC, a copy of the alleged lis pendens filed by WUIC, or records establishing the owner of the real property affected by the alleged lis pendens.

In their Joint Pretrial Order, the parties stipulate to certain facts underlying this adversary proceeding, including the entry of the Award and the Judgments and WUIC's collection efforts. The parties then stipulate that "around August or September of 2008, Salahuddin Hakim … [and] Ziahuddin Hakim, who were jointly and severally liable with the Sewells, paid WUIC for the underlying debt that forms the basis of this adversary proceeding." Both parties signed the Joint Pretrial Order, which supersedes any previous pleadings on file in the case. *See Morales v. Turman,* 535 F.2d 864, 867 n. 7 (5th Cir.1976), *rev'd on other grounds,* 430 U.S. 322 (1977). Thus, the parties' Joint Pretrial Order, which appears to concede that the Hakims paid WUIC, controls this action. *See Curtis v. Loether,* 415 U.S. 189, 190, n. 1 (1974) (where a claim was not included in the complaint, but was included in the pretrial order, "it is irrelevant that the pleadings were never formally amended" (citing FED. R. CIV. PROC. 15(b), 16)).

The Joint Pretrial Order, however, contains contradictory statements regarding who made or is obligated to make payment(s) to WUIC. Immediately after the stipulation that the Hakims paid WUIC, Alvarado Ltd. includes the following disputed statement of fact: "In August 2008, … [Alvarado Ltd.] agreed to pay WUIC the Judgments [sic] amounts then outstanding and WUIC agreed to assign to [Alvarado Ltd.] both the Judgments and all causes of action arising from the Judgments ….." The Joint Pretrial Order expressly states that the Sewells refuse to stipulate to these alleged facts.

The contradictions in the Joint Pretrial Order highlight the close relationship between Salahuddin, Ziauddin, and Alvarado Ltd. Alvarado Ltd. was formed by the Hakims at or around the time the arbitrator entered the Award against the Hakims, among others. Ziauddin is the sole member of Alvarado Ltd.'s general partner, Alvarado LLC,

which was also formed at or around the time of the Arbitration Award. Ziauddin's membership interest in Alvarado LLC is his personal property and, as such, is subject to attachment or levy for his liability on the Judgments under Texas law. *See* TEX. REV. CIV. STAT. art. 1528n, art. 4.04 ("A membership interest is personal property. A member has no interest in specific limited liability property."); TEX. R. CIV. P. 632 (addressing the requirements for the issuance of a writ of possession relating to personal property, among other things).

Alvarado Ltd. purportedly holds title to valuable commercial property. Alvarado Ltd. is owned and controlled by Ziauddin, Salahuddin, and the SZH Family Trust, which is controlled by Salahuddin as trustee. There are no outside owners or managers of Alvarado Ltd, and the entities do not appear to observe any of the usual formalities.

Neither the alleged assignment of the Judgments nor the agreement(s) reached with WUIC were introduced at trial.[6] Instead, Alvarado Ltd. primarily relied on Salahuddin's testimony to establish its standing.[7] Alvarado Ltd. contended, through Salahuddin's testimony, that at least one payment was made to WUIC from its bank account prior to trial. Alvarado Ltd. further contended that it had its own business purpose in acquiring the Judgments from WUIC, because WUIC had filed a lis pendens against the commercial property Alvarado Ltd. was developing as part of its joint venture with Luxor. However, neither the lis pendens nor evidence of its recording was introduced at trial. Alvarado Ltd. did not introduce documentary evidence of any

---

[6] Alvarado Ltd. represented to the Court that it had brought a copy of the settlement agreement to trial but that it did not believe it was required to introduce the settlement agreement into evidence.

[7] Salahuddin is not an attorney and is not a native speaker of English. He provided confused, hesitant, and inconsistent responses to many of the questions posed by counsel regarding the operation of and distinctions between Alvarado Ltd. and Alvarado LLC.

13

payment to WUIC or its ownership of any real property. Moreover, Alvarado Ltd. declined to introduce a copy of the settlement agreement, which purportedly assigns the Judgments to Alvarado Ltd., into evidence at trial.

Salahuddin's testimony reflected that he viewed his liability on the Judgments as having been resolved by the settlement agreement he reached with WUIC immediately prior to trial. Salahuddin testified that, upon completion of payments to WUIC, WUIC would release the Hakims from their liability to WUIC arising from the Judgments and would remove the lis pendens from Alvarado Ltd.'s property. Although Salahuddin testified that he is obligated to repay Alvarado Ltd. for the amounts paid to WUIC, he expressed no concern that Alvarado Ltd. would seek to forcibly collect the Judgments as he testified that WUIC had done. Notably, Alvarado Ltd. was represented by the same counsel as the Hakims in connection with the settlement with WUIC as well as this adversary proceeding.

As a general matter, a limited partnership is an entity separate and distinct from its partners, with separate, distinct liabilities and obligations. Nevertheless, Texas law allows the separateness of the entity to be ignored if the limited partnership is used as a straw man for the purpose of obtaining an impermissible result under Texas law.[8] *Cf: Fidelity & Deposit Co. of Maryland v. Com. Casualty Consultants, Inc.*, 976 F.2d 272, 274 - 75 (5th Cir. 1992) (explaining that, under Texas law, the separateness of a corporation may be disregarded under several related legal theories, including when: (1)

---

[8] The Sewells failed to plead or prove the affirmative defense of alter ego or any other grounds for piercing Alvarado Ltd.'s corporate veil. In Texas, alter ego "is shown from the total dealings of the [entity] and the individual, including the degree to which ... corporate and individual property have been kept separately, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes." *Aluminum Chem. (Bolivia), Inc. v. Bechtel Corp.*, 28 S.W.3d 64, 67 (Tex. App. - Texarkana 2000, no pet.).

the corporation is the alter ego of its owners or shareholders (*i.e.,* the alter ego theory); (2) the corporation is used for an illegal purpose (*i.e.*, the illegal purpose doctrine); and (3) the corporation is used as a sham to perpetrate a fraud). For example, as previously discussed, a judgment may be extinguished where the judgment is paid by and assigned to one who acts "for the use and benefit" of the judgment debtor. *See Hadad v. Ellison*, 283 S.W. at 196. Here, assuming the Judgments were not paid by the Hakims but were, instead, paid by and assigned to Alvarado Ltd., the Court finds and concludes Alvarado Ltd. is acting as a straw man for the benefit of the Hakims. *Cf: Bennett v. Dunn*, 504 F.Supp. 981 (D.C. Nev. 1980) (discussing the extinguishment of a judgment through assignment to a "man of straw" under California common law); *Marks v. L.C.J. Const. Co.,* 411 N.E.2d 1027 (Ill. App. 1980) (judgment extinguished where funds were loaned to a "straw man" to purchase the judgment). The Court, therefore, finds and concludes that Alvarado Ltd. has failed to satisfy its burden to establish that it is a creditor of the Sewells with standing to bring this nondischargeability action.

### B. Alvarado Ltd.'s Nondischargeability Claim

Although the Court has concluded that Alvarado Ltd. lacks standing to proceed with this nondischargeability action, the Court will address the substance of the adversary complaint in order to provide the parties with a full discussion of the issues presented at trial. The sole remaining claim, as previously discussed, is a claim for nondischargeability under §523(a)(2)(A) of the Bankruptcy Code.

Section 523(a)(2)(A) provides as follows:

> (a)  A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
> (2)  for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by--

> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition ….

11 U.S.C. §523(a)(2)(A). To have a debt excepted from discharge pursuant to the "actual fraud" provision in §523(a)(2)(A), an objecting creditor must prove that: (1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) the creditor justifiably relied on such representation; and (5) the creditor sustained losses as a proximate result of the representations. *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995). Actual fraud requires the additional proof of the debtor's intent to deceive and a loss by the creditor which is proximately caused by the fraud. *See id.*

Here, in connection with the sale of the Mayflower Home to the Doughertys, Suzanne submitted an application for a home warranty to WUIC in which she stated that Salahuddin had constructed the Mayflower Home. At the time she made this representation, Suzanne knew the representation was false. Suzanne made the representation with the intent to deceive WUIC and to obtain a warranty for the Mayflower Home. Suzanne had previously acted as the representative of Munir Homes, and WUIC justifiably relied on her representation that the Mayflower Home had been built by a qualified member of WUIC's warranty program. *See Beijing Metals & Minerals Import/Export Corp. v. American Business Ctr., Inc.,* 993 F.2d 1178, 1186 (5th Cir. 1993) ("'Justifiable reliance' represents a lesser burden on fraud plaintiffs than what 'reasonable reliance' might imply.") (internal citations and quotations omitted). WUIC issued a home warranty for the Mayflower Home and, thereafter, was obliged to pay the

16

Doughertys $120,802.31 as a proximate result of Suzanne's misrepresentations.

For the foregoing reasons, the Court finds that Alvarado Ltd. has established, by a preponderance of the evidence, that the Sewells' obligation arising from the Judgment on Arbitration Award is nondischargeable under §523(a)(2)(A) of the Bankruptcy Code. However, to the extent Alvarado Ltd. seeks a judgment of nondischargeability on the Final Judgment on Cross-Claim, Alvarado Ltd. failed to demonstrate the nature of the cross-claim or to articulate any grounds for nondischargeability specific to the Final Judgment on Cross-Claim. The Court, therefore, concludes that Alvarado Ltd. failed to establish that the Final Judgment on Cross Claim is nondischargeable under §523(a)(2)(A).

## IV. CONCLUSION

In conclusion, Alvarado Ltd. failed to satisfy its burden at trial to establish that it has standing to bring this nondischargeability action. The Court will enter a Judgment that Alvarado Ltd. shall take nothing on its claims against the Sewells consistent with this Memorandum Opinion. In light of this Judgment, the Court will deny the Sewells' pending motion for summary judgment and motion to dismiss as moot.

Signed on 09/02/2009

_Brenda T. Rhoades_  MD
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE